J-S25044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | No. 99 MDA 2019 |

Appeal from the Decree Entered December 13, 2018
in the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2018-00374

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 20, 2019**

R.S. ("Father") appeals from the Decree granting the Petition filed by the Lancaster County Children and Youth Social Service Agency ("CYS"), and involuntarily terminating his parental rights to his minor daughter, S.S. ("Child"), born in December 2015, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court set forth the factual and procedural history in its Opinion, which we adopt for the purpose of this appeal.  **See** Trial Court Opinion, 2/12/19, at 2-11.

The trial court held termination hearings with regard to Child on April 19, 2018, July 12, 2018, and December 6, 2018.  At these hearings, Pamela

---

[1] In the same Decree, the trial court also involuntarily terminated the parental rights of Child's mother, A.L. ("Mother").  Mother has not filed an appeal from the Decree, but she filed a counseled brief in the instant appeal, wherein she argued that Father had failed to preserve his sole issue on appeal.

J. Breneman, Esquire, the guardian *ad litem* ("GAL") for Child and her minor half-sibling, X.L., opined that the GAL could serve as both GAL and the legal interest counsel for the children, as there was no conflict in the children's legal interests and best interests.[2]  ***See*** N.T., 4/19/18, at 5-6; N.T., 7/12/18, at 6-7.  The GAL explained that Child was three years old and unable to express a preferred outcome.[3]  N.T., 12/6/18, at 4, 6.  At the hearing on July 12, 2018, Father asked the trial court not to terminate his parental rights to Child, as he needed additional time to better himself and become involved in Child's life.  ***Id.*** at 44.

On December 13, 2018, the trial court entered the Decree involuntarily terminating Father's parental rights to Child, pursuant to section 2511(a)(1), (2), (5), (8), and (b).  Father then timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In his Concise Statement, Father asserted that the trial court "erred in its decision to *change the goal* for [] [C]hild because it

---

[2] ***See In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017) (plurality) (holding that 23 Pa.C.S.A. § 2313(a) requires the appointment of counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding, and defining a child's legal interest as synonymous with his or her preferred outcome).

[3] ***See In re T.S.***, 192 A.3d 1080, 1092 (Pa. 2018) (explaining that if the preferred outcome of the child is incapable of ascertainment because the child is very young, there can be no conflict between the child's legal interests and his or her best interests).

was not supported by the evidence and because it is not in the best interests of [] [C]hild." Concise Statement, 1/10/19 (emphasis added).

In his brief on appeal, Father raises one issue for our review:

I. Did the trial court abuse its discretion when it held that the best interests and welfare of [Child] would be best served by a termination of [Father's parental] right[s] even though Father had regular, frequent visits with [Child], previously lived with [Child], and the record lacks evidence of the emotional impact on [] [C]hild upon severance of the parental bond?

Father's Brief at 4.

We must first determine whether Father preserved his issue on appeal, in light of the fact that the issue he identified in his brief is different from the issue presented in his Concise Statement. On this basis, we could deem Father's issue to be waived. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the Statement … are waived."); **see also Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be deemed waived."); **In re L.M.**, 923 A.2d 505, 510 (Pa. Super. 2007) (applying **Lord**). However, the trial court, in its Opinion, discerned that Father desired to challenge the termination of his parental rights to Child (not a change of Child's placement goal), **see** Trial Court Opinion, 2/12/19, at 18, and addressed his claim as such. **See generally Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (declining to find waiver because the trial court had addressed the issues raised in an untimely concise statement). We will

likewise address the merits of Father's challenge to the termination of his parental rights.

We review Father's appeal in accordance with the following standard:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re T.C.*, 984 A.2d 549, 551 (Pa. Super. 2009) (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented[,] and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re D.L.B.*, 166 A.3d 322, 326 (Pa. Super. 2017) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *Id.* (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will review the trial court's decision to terminate Father's parental rights based upon sections 2511(a)(2) and (b), which state the following:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

The Pennsylvania Supreme Court has addressed incapacity sufficient for termination under section 2511(a)(2) as follows:

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

***In re Adoption of S.P.***, 47 A.3d 817, 827 (Pa. 2012) (citations omitted); ***see also In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010) (explaining that the grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

In the instant appeal, the trial court primarily analyzed the evidence under subsection 2511(a)(8), but also stated that it found clear and convincing evidence to terminate under subsection (a)(2), stating, in relevant part, as follows:

> Testimony at the July 12, 2018, hearing indicated that Father had been given a referral for a psychological evaluation but had not even scheduled same, and that Father had not re-engaged in drug and alcohol counseling[,] as he had been incarcerated so often.

- 6 -

Father's domestic violence objective had not been addressed. Father was living with his mother, which was not an adequate setting for [] Child. On June 21, 2018, Father pled guilty to public drunkenness. It is apparent that as of the July 12, 2018, hearing date – four months after Father was served with [CYS's] [P]etition to terminate his parental rights – Father was not remotely close to completing the objectives on [] [C]hild's permanency plan.

Trial Court Opinion, 2/12/19, at 15 (citation to record omitted).

Further, although the record does show that Father attended some visits with Child,[4] this fact alone will not prevent the termination of his parental rights,[5] particularly where Father failed to complete nearly all of his court-ordered objectives:

- Mental Health and Drug and Alcohol Objective: Incomplete. Father was unsuccessfully discharged from at least three separate mental health/drug and alcohol programs, mostly due to noncompliance. *See* N.T., 4/19/18, at 49-52. Father failed to sign releases so that CYS could communicate with the respective facilities. *See id.* Father also failed to schedule a psychological evaluation, despite receiving a referral from CYS. N.T., 7/12/18, at 15.

- Domestic Violence Counseling Objective: Incomplete. Father failed to schedule a domestic violence evaluation, despite receiving a referral from CYS. *Id.*

- Crime-Free Objective: Incomplete. Father has an extensive criminal history, committed a new offense in June 2018, and

---

[4] According to the GAL, during the approximately 2-year period that Child was in placement, Father visited with Child approximately 12 times. Brief for the GAL at 10. Additionally, the GAL maintains that even though Child and Father did live in the same household for, approximately, the first 9 months of Child's life, Father "was never in a caretaking role of [Child]." *Id.* at 7.

[5] *See*, *e.g.*, *In re Z.P.*, 994 A.2d at 1121 (stating that "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights.").

was on house arrest at the time of entry of the Decree. ***Id.*** at 15-19, 23-24; N.T., 4/19/18, at 49-54, 57; ***see also*** Trial Court Opinion, 2/12/19, at 7-8.

- Parenting Counseling Objective: Incomplete. CYS was unable to make a parenting referral due to Father's sporadic incarceration and his failure to complete mental health/drug and alcohol treatment. N.T., 4/19/18, at 59.

- Housing Objective: Incomplete. Father was residing in the home of his mother, which was deemed an inappropriate place for Child to reside due to the fact that this was the home from which she was removed by CYS, due to domestic violence incidents involving the adults residing in the home. N.T., 7/12/18, at 15, 28-30, 45; ***see also*** N.T., 4/19/18, at 60.

- Maintain Adequate Income Objective: Incomplete. Father was not employed at the time of any of the termination hearings.

Thus, because the record shows that Father was either incapable of or refused to address his objectives, and that the causes of his incapacity or refusal cannot or will not be remedied by Father, the record supports the termination of his parental rights under subsection 2511(a)(2). ***See In re M.P.***, 204 A.3d 976, at **9-10 (Pa. Super. 2019) (holding that termination of mother's parental rights under subsection 2511(a)(2) was proper where mother had failed to complete many of her objectives, including those concerning her drug addiction, remaining crime-free, and obtaining suitable housing for the children, and rejecting mother's plea that she needed more time to address these issues). Additionally, although Father claimed that he wanted to preserve his relationship with Child and needed additional time in which to complete his goals, in light of Father's long history of uncooperativeness, the trial court properly rejected Father's plea as being

untimely or disingenuous. *See In re A.L.D.*, 797 A.2d at 340; *see also In re M.P.*, 204 A.3d 976, at *10. The evidence is clear that Child needs permanency; it would not be in her best interests for her life to be placed on hold any longer. *See In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."); *see also In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) (stating that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). We, therefore, find no reason to disturb the trial court's conclusions or its discretion in terminating Father's parental rights to Child under subsection 2511(a)(2).

Next, we review Father's contention that the trial court abused its discretion in determining that termination served Child's best interests under section 2511(b). Father's Brief at 10-12. Father challenges the trial court's finding that there was no bond, or only a *de minimis* bond, between Father and Child. *Id.* at 10-11. Father counters that

> [t]he record proves that [F]ather spent the first eight months living with [Child]; frequently visited [Child] both in and out of prison and treatment facilities; and that these visits were appropriate. Based on the record[,] … a bond does exist. The trial court cannot summarily dismiss it.

Father's Brief at 11; *see also id.* (asserting that the record is devoid of any evidence demonstrating how the severance of this bond will effect Child).

We conclude that the evidence in the certified record demonstrates that the termination of Father's parental rights would best serve Child's needs and welfare because (1) it would provide Child with the permanence and stability that she needs in her life with her pre-adoptive family, where she resides with her step-brother, X.L.; and (2) even if there is a *de minimis* bond between Child and Father, it is in Child's best interests for such bond to be severed, and she will suffer no detriment. **See** Trial Court Opinion, 2/12/19, at 17; **see also id.** at 13 (wherein the trial court found that Child now resides in a "nurturing, loving and [] stable home environment, which Father failed to provide."). At the time of the entry of the Decree terminating Father's parental rights, Child had been in placement for nearly 2 years, the majority of her young life. It serves Child's developmental, physical and emotional needs and welfare to terminate Father's parental rights, since it is unclear when, if ever, Father will be ready to assume his parental responsibilities. **See In re Adoption of C.L.G.**, 956 A.2d at 1007 (noting that courts "will not toll the well-being and permanency of [a child] indefinitely."). We determine that there is clear and convincing evidence in the record that supports the trial court's conclusion regarding the termination of Father's parental rights to Child pursuant to section 2511(b). Accordingly, we affirm the trial court's Decree.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/20/2019</u>

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                               :
                                     :
      S.S.                           :        No. 00374 of 2018
                                     :
      INVOLUNTARY TERMINATION        :
                                     :

## OPINION *SUR* APPEAL

This opinion is written in response to an appeal from this
court's grant of a Decree which involuntarily terminated the
parental rights of R  Q  S        as birth father of S.S.
(hereinafter referred to as "S.S." or the "Child").

The Lancaster County Children and Youth Social Service
Agency (hereinafter, the "Agency") filed a Petition to Terminate
Parental Rights of S.S. on February 14, 2018.

R    Q    S        , father of S.S.(hereinafter, "Father")
was personally served with the petition on February 20, 2018.
(Affidavit of Service P-1, 3/22/2018). The mother of S.S.,
A    L  L        (hereinafter, "Mother"), was served with
the petition on February 22, 2018. (Affidavit of Service P-1,
3/22/2018). Mother is not a party to this appeal.

The Court held a termination of parental rights hearing on
January 25, 2018, with regard to the Child's half-sibling,
X    · J·  · L        (hereinfter, "X.L."), who was in the legal
and physical custody of the Agency. The mother of X.L. is also
the mother of S.S., but X.L. has a father other than Father. As
the undersigned did not preside over any of the juvenile

proceedings in respect to X.L. which occurred prior to January 2018 and the record of the juvenile proceedings was incorporated into the record of the termination proceedings, it was necessary to obtain and review the record of all of the juvenile proceedings before the court could decide the Agency's petition in respect to X.L. In addition, the court was advised at the time of the termination of parental rights hearing in respect to X.L. that the Agency would be filing a petition to terminate the parental rights in respect to the Child. The court issued an Order that deferred its ruling on the termination of X.L. until the termination proceeding had been completed with regard to S.S. After obtaining and reviewing the record of all of the juvenile proceedings, a Decree was entered on December 12, 2018 (and was docketed on January 13, 2018) which involuntarily terminated Mother's parental rights to X.L. and Mother's and Father's parental rights to S.S.

Father filed his Notice of Appeal on January 14, 2019. The appeal was timely filed (as January 12, 2019, a Saturday, was the thirtieth day after the Decree was docketed).

## PROCEDURAL HISTORY REGARDING S.S.

S.S. was born on December    2015. The Agency filed a standby Petition for Custody on January 20, 2017, and subsequently filed a Petition for Custody on January 23, 2017.

-2-

The Agency alleged S.S. is a dependent child pursuant to 42 Pa. C.S. § 6302, in that she:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his/her physical, mental, or emotional health, or morals; a determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.[1]

A Shelter Care Order was issued January 31, 2017, which granted the Agency temporary custody of S.S. The Honorable Jay J. Hoberg issued an Order of Adjudication and Disposition on February 21, 2017, which found the Child to be a dependent child, a finding to which the parents agreed through their respective attorneys. The court approved a child's permanency plan which contained reunification for the parents as the primary permanency goal and adoption as the concurrent permanency goal.

In the orders which followed permanency review hearings held on June 20, 2017, and November 17, 2017, the court found that Father had achieved minimal progress toward completing the objectives in his plan. The court, in the Permanency Review Order dated July 12, 2018, found that Father achieved minimal progress toward completing the objectives in his plan, that the Child had been in placement for 18 months, and that neither

---

[1] Agency's petition, page 4 .

-3-

parent was then able to care for the Child. At a permanency review hearing held on September 12, 2018, the juvenile dependency master found that Father had achieved no progress toward completing the objectives in his plan.

Termination of parental rights hearings were held on April 19, 2018, July 12, 2018, and December 6, 2018.

In its Petition to Terminate Parental Rights, the Agency alleged as the basis for termination that:

A.   The parents, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, either have evidenced a settled purpose of relinquishing parental claim to said child or have refused or failed to perform parental duties (Section 2511 (a)(1)).

B.   The repeated and continued incapacity, abuse, neglect, or refusal of the parents has caused the child to be without essential parental care, control, or subsistence necessary for her physical and mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by said parents.   (Section 2511 (a)(2)).

C.   The child has been removed from the care of the parents by the Court for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parents cannot or will not remedy these

-4-

conditions within a reasonable period of time, the services or assistance reasonably available to the parents are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child. (Section 2511 (a)(5)).

D.    The child has been removed from the care of the parents by the Court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. (Section 2511 (a)(8)).

## FINDINGS OF FACT

1.    S.S. was born December    2015.    (Agency's Petition for Custody)

2.    A    L    is the mother of S.S. (Agency's Petition for Custody)

3.    R    S    is the father of S.S. (Agency's Petition for Custody)

4.    On January 31, 2017, a shelter care hearing was held with regard to S.S.    Father was present. (N.T. 01/31/17 at page 3)

5. The parents waived the shelter care hearing without admission in respect to any of the allegations of dependency regarding S.S. (N.T. 01/31/17 at page 9)

6. Father was incarcerated at the time of the shelter care hearing. (N.T. 01/31/17 at page 12)

7. Immediately prior to the Child's placement, the Child had been living with her paternal grandmother, her paternal step-grandfather, and her paternal grandfather. (N.T. 01/31/17 at page 6)

8. The parents agreed to a finding of dependency for S.S. at the adjudication and disposition hearing on February 21, 2017, (N.T. 02/21/17 at pages 4-6 and at page 9)

9. Father was still incarcerated at the time of the adjudicatory hearing. (N.T. 02/21/17 at page 7)

10. In respect to disposition, the court established a primary permanency goal of return to a parent and a concurrent permanency goal of adoption for S.S. (N.T. 02/21/17 at page 11)

11. Father R    S.        's objectives were to address his drug and alcohol use, to address his mental health, to remain crime-free, to maintain adequate income, to address concerns about domestic violence, to obtain adequate housing, and to demonstrate commitment to the Child. (N.T. 02/21/17 at pages 7-8)

-6-

12. There was a five-months permanency review hearing for S.S. on June 20, 2017. (N.T. 06/20/17 at page 4)

13. Father was participating in an inpatient drug treatment program at the time of that review hearing. (N.T. 06/20/17 at pages 15-16)

14. Father had been sent to Eagleville Hospital, an inpatient rehabilitation facility on April 10, 2017, but he was unsuccessfully discharged on June 1, 2017, due to non-compliance. (N.T. 06/20/17 at page 16)

15. Father was then picked up and re-incarcerated at the Lancaster County Prison on June 2, 2017. (N.T. 06/20/17 at page 16)

16. Father had completed nothing in respect to the objectives in the child's permanency plan at the time of the hearing held on June 20, 2017, and the court characterized Father's progress as "minimal". (N.T. 06/20/17 at page 18; Permanency Review Order dated June 20, 2017, and filed June 26, 2017)

17. Father's criminal history dates back to 2013 for a conviction for manufacturing, delivering, or possessing with intent to deliver a controlled substance. (N.T. 06/20/17 at page 46)

18. Father was on parole during the first thirteen months after the Child's birth. He lived with the Child from the time

-7-

of her birth until she was approximately eight to nine months old. He then went to jail for three months. He was released in December, 2016, but did not return to the home where the Child was residing. Father has not lived with the Child since August, 2016. (N.T. 06/20/17 at pages 43-48)

19. Father was arrested and returned to prison on January 30, 2017, due to a drug possession charge. (N.T. 06/20/17 at pages 46-49)

20. On April 10, 2017, Father was moved to Eagleville Hospital for drug rehabilitation. He remained in that facility for about forty-five days, at which time he was unsuccessfully discharged after he tested positive for Suboxone which his ex-girlfriend had brought to him. Father was then returned to prison. (N.T. 06/20/17 at pages 44-49)

21. Father was released from prison in July, 2017, directly to drug treatment at Pyramid Healthcare. He was unsuccessfully discharged from that program and returned to the Lancaster County Prison on August 2, 2017. (N.T. 04/19/18 at pages 51-52)

22. Father next entered drug treatment at Roxbury on October 10, 2017. He was unsuccessfully discharged on October 26, 2017, and was returned to the Lancaster County Prison, where he remained as of the time of the review hearing for S.S. held on November 17, 2017. (N.T. 11/17/17 at page 6; N.T. 04/19/18 at pages 50-54)

-8-

23. The Agency filed its petition to terminate Father's parental rights to S.S. on February 14, 2018. (Agency's petition as docketed)

24. Father was served with notice of the Agency's petition on February 20, 2018. (N.T. Petitioner's Exhibit 1 of 03/22/18)

25. As of the April 19, 2018 hearing, Father had failed to obtain a psychological evaluation or a parenting capacity evaluation since the Child has been placed with the Agency. (N.T. 04/19/18 at pages 49-50)

26. Father was referred to two drug treatment centers, had two unsuccessful discharges, and was incarcerated or in treatment but for a few days here or there at all other times since S.S. has been in placement. (N.T. 04/19/18 at pages 50-52)

27. On March 20, 2018, Father successfully completed an inpatient treatment program and it was recommended he enter a co-occurring intensive outpatient program. (N.T. 04/19/18 at pages 53-54)

28. The outpatient program addresses both mental health and drug and alcohol treatment. (N.T. 04/19/18 at page 54)

29. As of the April 19, 2018, hearing, Father was participating in this same outpatient program. He remained on probation and was compliant. (N.T. 04/19/18 at pages 55-57)

-9-

30. As of the April 19, 2018, hearing, Father's domestic violence and parenting objectives remained incomplete. (N.T. 04/19/18 at pages 58-59)

31. In respect to the commitment objective, as of the April 19, 2018, hearing, Father had had some visits with the Child while he was incarcerated and was having regular visits since March 29, 2018, when he was released to house arrest. (N.T. 04/19/18 at pages 57 and 61)

32. As of the April 19, 2018, hearing, X.L. and S.S. were placed together in a resource home and the resource parents were willing to adopt both children. (N.T. 04/19/18 at pages 64 and 66)

33. As of the April 19, 2018, hearing, Father did not have a relationship with S.S. due to his limited contact with the Child. (N.T. 04/19/18 at page 68)

34. On June 4, 2018, Father was arrested and charged with public drunkenness and this was a violation of his probation; he was incarcerated from June 4 to June 29. (N.T. 07/12/18 at page 16)

35. As of the July 12, 2018, hearing, the Agency had referred Father to Hugh Smith and Associates for a psychological evaluation, but Father had not scheduled the evaluation. (N.T. 07/12/18 at page 15)

36. As of the July 12, 2018, hearing, Father's drug and alcohol counseling obejctive was not complete nor was his domestic violence objective. (N.T. 07/12/18 at page 15)

37. At the July 12, 2018, hearing, it was reported that Father spends a lot of time on his cell phone during his visits with S.S. (N.T. 07/12/18 at pages 19-20)

38. Father completed his in-patient drug and alcohol treatment on March 20, 2018, but in June, 2018, Father was cited for public drunkenness. (N.T. 07/12/18 at page 47)

39. The Guardian *ad litem* supports termination of Father's parental rights as it is in the Child's best interests and conforms with the Child's legal interests, in that S.S. is too young to articulate an opinion in respect to her legal interests. (N.T. 12/06/18 at pages 4-5)

## CONCLUSIONS OF LAW

1. The Agency proved by clear and convincing evidence that:

(a) the repeated and continued incapacity of Father has caused the Child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and,

(b) the conditions and causes of the incapacity cannot or will not be remedied by Father.

-11-

2. The Agency proved by clear and convincing evidence that:

(a) the Child has been removed from the care of Father for a period of at least six months;

(b) the conditions which led to the removal of the Child continue to exist;

(c) Father cannot or will not remedy these conditions within a reasonable period of time;

(d) the services or assistance reasonably available to Father are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time; and,

(e) termination of Father's parental rights would best serve the needs and welfare of the Child.

3. The Agency proved by clear and convincing evidence that:

(a) the Child has been removed from the care of Father by the Court;

(b) twelve months or more had elapsed from the date of removal;

(c) the conditions which led to the removal of the Child continue to exist; and,

(d) termination of Father's parental rights would best serve the needs and welfare of the Child.

-12-

4. The Agency proved by clear and convincing evidence that termination of Father's parental rights will best serve the developmental, physical, and emotional needs and welfare of the Child because the Child is in need of a nurturing, loving and a stable home environment, which Father failed to provide.

## DISCUSSION

In termination of parental rights cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa.Super. 2005)

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)

In matters involving involuntary termination of parental rights, the appellate standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 616 Pa. 309, 325, 47 A.3d 817, 826 (2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.*, at 325-26, 47 A.3d at 827. We

-13-

have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See in re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010).

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004)(citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003)(citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa. C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007)(citations omitted).

Instantly, the Agency filed for termination on four grounds, three of which are clearly applicable to Father; specifically,

-14-

those grounds set forth in 23 Pa.C.S.A. § 2511 (a), subsections (2), (5), and (8).

Testimony at the July 12, 2018, hearing indicated that Father had been given a referral for a psychological evaluation but had not even scheduled same, and that Father had not re-engaged in drug and alcohol counseling as he had been incarcerated so often. (N.T. 07/12/18 at pages 14-15) Father's domestic violence objective had not been addressed. Father was living with his mother, which was not an adequate setting for the Child. On June 21, 2018, Father pled guilty to public drunkenness. It is apparent that as of the July 12, 2018, hearing date - four months after Father was served with the Agency's petition to terminate his parental rights - Father was not remotely close to completing his objectives on the child's permanency plan.

The controlling statute, in respect to grounds for termination under 23 Pa.C.S.A. § 2511 (a)(8), provides that "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511 (a). Father was served with the Agency's petition (February 20, 2018). If the status of Father's progress four months after he was notified that his parental rights were

-15-

in peril was so abysmal, it is abundantly clear that the Agency had met its burden of proof under 23 Pa.C.S.A. § 2511 (a)(8).

S.S. had been in placement for almost 23 months when the last hearing on the Agency's petition to terminate Father's parental rights took place on December 6, 2018. A child cannot wait indefinitely for a parent to reach the point where the parent is capable of discharging parental duties.

> [B]y allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to parent's claim of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care. *In re Adoption of R.J.S.*, 2006 PA Super 127, 901 A.2d 502 at 513.

By the most stringent measure, applying the law to the facts in this case leads to the inescapable conclusion that termination of parental rights is warranted.

After determining that the parent's conduct supports a finding of grounds for termination of parental rights under the statute, the court must examine the needs of the child. The Court must determine the presence of any parent-child bond, which encompasses intangibles such as love, comfort, security and stability. When an emotional bond is present between parent and

-16-

child, the court must consider the effect of its permanent severance on the child. Our Supreme Court has spoken about this consideration in a termination case: "To render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds, in a case such as this where a bond to some extent at least, obviously exists...is not proper." *In re E.M.*, 533 Pa. 115, 123, 620 A.2d 481, 485 (1993)

In this case, it is obvious that if any bond exists between the Child and Father, such bond is *de minimis* as Father has had sporadic, brief contacts with the Child since she was nine months old. The court can find no detriment to the Child in severing a bond so tenuous. Further, on December 6, 2018, the Child's Guardian *ad litem*, who has served the Child since the inception of the case, offered that there was no conflict between the Child's best interests and legal interests, and that the Guardian *ad litem* supports termination of Father's parental rights as being in the Child's best interests. Of note, the Child is placed with her half-sibling in a home which is an adoptive resource for them both. Accordingly, the court has no hesitation in finding that the Child's best interests are served by the termination of Father's parental rights, as such will enable the Child to have the permanency which the law requires and which she deserves.

Father, in his Statement Of Errors Complained Of On Appeal filed on January 14, 2019, to the Orphans' Court case in this court, specifically complains that it was error "to change the goal for the Child because it was not supported by the evidence and is not in the best interests of the Child."[2] In the context of a termination of parental rights proceeding, it is inherent that a child's primary permanency goal in the juvenile dependency proceedings will be changed to adoption if the Court determines that both prongs of the necessary inquiry in respect to the termination of parental rights have been satisfied in the Orphans' Court proceedings and a decree has been entered to that effect, as occurred here. The entry of an order in the juvenile dependency proceedings to change the Child's primary permanency goal from reunification with parent to adoption has not yet occurred. As such, Father's assignment of error is premature. The court has nevertheless addressed the essence of Father's assignment of error. The record more than amply demonstrates that the court's termination of Father's rights is supported by the evidence and is in the best interests of the Child.

---

[2] Father's Statement of Errors lists the docket number for the termination of parental rights proceeding but styles the case in the Juvenile Division and not the Orphans' Court division.

-18-

## CONCLUSION

The issues raised by Father in his Notice of Appeal lack merit and the Decree entered on December 12, 2018, should be affirmed.

BY THE COURT:

_____
JEFFREY J. REICH, JUDGE

Dated: February 12, 2019

Attest:

/s/ Chevy Sigwart
Deputy Clerk of Orphan's Court

Copies to:

Catherine I. Roland, Esquire
110 East King Street, 2nd Floor
Lancaster PA   17602

    Counsel for Mother

Pamela J. Breneman, Esquire
110 East King Street, 2nd Floor
Lancaster PA   17602

    Guardian *ad litem*

Stacey Lindsay, Esquire
P.O. Box 40
Silver Spring PA 17575

    Counsel for Father

David J. Natan, Esquire
Lancaster County Children and Youth Social Service Agency
150 North Queen Street, Suite 777
Lancaster PA   17603

    Counsel for the Agency

NOTICE OF ENTRY OF ORDER OR DECREE PURSUANT TO PA O.C. RULE 4.6. NOTIFICATION: THE ATTACHED DOCUMENT HAS BEEN FILED IN THIS CASE WITH THE ORPHANS' COURT OF LANCASTER COUNTY, PA. DATE: 2-13-19

-19-